IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JON R. ORLANDO, | § | |
| (TDCJ No. 02416162), | § | |
|     Plaintiff, | § | |
| V. | § | Civil Action No. 4:23-cv-876-O |
| | § | |
| DIRECTOR, | § | |
| JOHN PETER SMITH MEDICAL, et al., | § | |
|     Defendants. | § | |

## OPINION and ORDER

This case was filed by then Tarrant County Jail[1] inmate/plaintiff Jon R. Orlando ("Orlando") asserting claims against the John Peter Smith Hospital Medical Director and Tarrant County Jail Nurse Marcus. Am. Compl. 1-3, ECF No. 6. By Opinion and Order issued on March 19, 2024, the Court dismissed Orlando's claims against the John Peter Smith Hospital Medical Director under the authority of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii). ECF Nos.10 and 11. The Court allowed Orlando to serve his remaining claims on Nurse Marcus. ECF Nos. 12, 14 and 15. Now pending is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by the remaining defendant Marcos Guerra (hereafter identified as "Nurse Marcos"). ECF No. 16. Orlando has not filed a response to the motion. After considering the relief sought by Orlando, the pleadings, record, briefing and applicable law, the Court finds that the motion to dismiss must be **GRANTED**.

### I. BACKGROUND/ REMAINING CLAIMS

Orlando filed an original handwritten complaint on August 22, 2023. Compl. 1, ECF No. 1. Because Orlando was a prisoner asserting civil rights claims, the Court, citing Miscellaneous

---

[1] Orlando is now housed in the TDCJ-CID Roach Unit.

Order Number 14, directed Orlando to file a completed form civil rights complaint with any attachments as an amended complaint. ECF No. 4. Orlando then filed his amended complaint. ECF No. 6. He named as defendants "Nurse Marcos," along with "John Peter Smith Healthcare Director." Am. Compl. 1, 3, ECF No. 6. After review, the Court issued an Order directing Orlando to answer the Court's questions about his claims by filing a more definite statement ("MDS"), which Plaintiff did on February 26, 2024.[2]  ECF Nos. 8 and 9.

Orlando alleges that on September 4, 2021, he reported 2 spider bites, one to his left hand and the other to his left calf. Am. Compl. at 4, ECF No. 6. Orlando alleges he was refused access to medical care by Nurse Marcos. *Id.*  He further alleges that he made requests on the tablet and with guards but was repeatedly told that he was on a low priority list for antibiotic or a doctor visit. *Id*. Orlando alleges that "Nurse Marcus" was passing medications to various prisoners from "wing to wing" when "Nurse Marcos" refused his request for medical help. MDS at 1(A), ECF No. 9.  Orlando alleges that the reason he was not taken to the medical facility as a walk in was because he was told there was "no time, backlog due to covid procedures, not emergency . . . [and] only passing pills." *Id.* at 1(B). He further alleges that "Nurse Marcos" refused to refer him to medical, knowing he had a severe medical emergency and that "Nurse Marcos" recognized that Plaintiff's marks were spider bites. *Id*. at 1(D). Orlando alleges that the "nurse . . . did neglect to follow emergency protocol, or any medical procedure." *Id*. at 1(3).

Orlando alleges that the actions from "Nurse Marcos" demonstrate a violation of his constitutional rights and a failure to provide reasonable care/negligence because "staff

---

[2]As noted above, the Court dismissed all plaintiff Orlando's claims against the John Peter Smith Medical Director by Opinion and Order of Partial Dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). ECF Nos. 10 and 11.

acknowledged bites, allergy, and infection. Symptoms reported evidence shows [] deliberate indifference by refusing [him] access to medical facility or 'walk in', anyone else who showed these symptoms would have been sent to medical for treatment." MDS at 2(6), ECF No. 9. Orlando alleges he received a permanent scar and nerve damage. *Id*. at 2.

## II.     MOTION TO DISMISS

### A.     Overview

Nurse Marcos raises the following grounds for dismissal under Rule 12(b)(6). First, Defendant argues that Orlando's pleadings do not overcome Nurse Marcos's qualified immunity defense. Additionally, to the extent Orlando alleges a claim against Nurse Marcos in an official capacity, the motion argues that Orlando has not pleaded a sufficient claim of official capacity liability. Lastly, the movant argues that, to the extent Orlando asserts a state law cause of action, Orlando has not properly pleaded such a claim against an employee of a governmental entity.

### B.     Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the

four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 662, 678-680 (2009). If the pleadings fail to meet the requirements of *Iqbal* and *Twombly* no viable claim is stated and the pleadings are subject to dismissal.

### C. Qualified Immunity -Overview

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Its protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223 (2009) (citation omitted). Public officials sued in their individual capacities, in fact, are presumed to enjoy qualified immunity, which is an immunity from the lawsuit itself, not merely from liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994) ("Abrogation of qualified immunity is properly the exception, not the rule.") (citation omitted). A plaintiff "has the burden to negate the [qualified immunity] defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

"To surmount [the qualified immunity] barrier at the motion to dismiss stage, the plaintiffs 'must plead specific facts that both allow the court to draw the reasonable inference

5

that the defendant is liable for the harm [they have] alleged and that defeat a qualified immunity defense with equal specificity.'" *Torns v. City of Jackson*, 622 F. App'x 414, 416 (5th Cir. 2015) (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Qualified immunity raised in the motion to dismiss must be considered and decided by the District Court before other litigation in the case proceeds, and all discovery must be considered and decided by the District Court before other litigation in the case proceeds, and all discovery must be stayed during that process. *Carswell v. Camp*, 37 F. 4th 1062, 1066 (5th Cir. 2022).

In short, it is Orlando's burden to overcome Nurse Marcos's entitlement to qualified immunity by "establishing a genuine fact issue as to whether the allegedly wrongful conduct violated clearly established law," including by providing the Court with a sufficiently similar case "that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)). Here, Orlando cannot "identify a case where an [nurse] acting under similar circumstances . . . was held to have violated" any federal right of his, placing "the statutory or constitutional question beyond debate." *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017) (quoting *White v. Pauly*, 580 U.S.73, 77-78 (2017) (other citations omitted)).

1. <u>Prong 1 - Failure to State a Claim of Violation of a Constitutional Right</u>

Because Orlando was a pretrial detainee at the time of the alleged incident, September 2021, his denial of medical claims arises under the Fourteenth Amendment. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) ("The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.") (citation omitted). The Fourteenth Amendment guarantees pretrial

6

defendants the right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (other citations omitted).

Orlando's claims under 42 U.S.C. § 1983 against Nurse Marcos must be dismissed because he has failed to allege facts to show deliberate indifference. The defendant's "deliberate indifference to the detainee's needs" is a required element of a due-process claim when the claim "faults specific jail officials for their acts or omissions." *Est. of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015). "Deliberate indifference is an extremely high standard to meet." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations omitted).

To plead deliberate indifference, Orlando must allege facts that plausibly show that "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Id*. at 380-81 (internal quotations omitted). The Fifth Circuit has "consistently recognized . . . that deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Id.* at 380.

In § 1983 cases against medical personnel, moreover, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). An alleged violation of the standard of care is insufficient to whether deliberate indifference exists. *See Id.* at 349.

Here, Orlando has not pleaded facts sufficient to show that Nurse Marcos was deliberately indifferent to Orlando's known medical needs.  This is because he cannot demonstrate by the facts pleaded that Nurse Marcos ever actually formed the subjective belief that Orlando needed any urgent medical care, much less that Nurse Marcos ignored any such

(un)known need. Orlando asserts, in conclusory fashion, that Nurse Marcos knew that his spider bites were infected and required immediate medical attention. MDS at 1(B) and (D), ECF No. 9. However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn*, 42 F.3d at 931. Review shows that Orlando's factual allegations disprove his theory.

In this regard, Orlando alleges that Nurse Marcos was in the process of "passing medications" "wing to wing" to the prisoners when Orlando allegedly requested medical attention for his "spider bites." MDS at 1(A), ECF No. 9. Orlando alleges that the reason he was not immediately taken to the medical facility as a walk in **was not** because Nurse Marcos ignored the severity of his alleged medical condition; rather, because Nurse Marcos medically judged his medical issues as "not [an] emergency" and because of "backlog due to Covid procedures." *Id.* In fact, Orlando alleges that he was put "on a law priority list for antibiotics/Dr. visit." Am. Compl. at 4 (V), ECF No. 6.

In other words, Nurse Marcos allegedly examined the "two bites," indicated that they were spider bites, and made the medical judgment that it was not an emergency medical situation and put him on the "low priority list for antibiotics/Dr. visit." Am. Compl. at 4, ECF No. 6; MDS at 1(A), ECF No. 9. Such an allegation does not constitute deliberate indifference because the "decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346; *Barnes v. Johnson*, 204 F. App'x 377, 379 (5th Cir. 2006) (no deliberate indifference pleaded where claims were based on allegation that doctor "did not conduct a more th[o]rough 'physical' examination or take x-rays"); *Aguocha-Ohakweh v. Harris Cnty. Hosp. Dist.*, 731 F. App'x 312, 315 (5th Cir. 2018) (no deliberate indifference pleaded where claims were based on doctor's alleged failure to timely provide decedent with

chemotherapy); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (no deliberate indifference where claim was based on medical personnel's decision to require plaintiff to stand in line for meals instead of bringing food to him in the infirmary).

Importantly, Orlando characterizes Nurse Marcos' actions as medical negligence. Specifically, Orlando alleges that the "nurse . . . did neglect to follow emergency protocol, or any medical procedure." MDS at 1(3), ECF No. 9. Additionally, Orlando seeks damages "due to his [(Nurse Marcos's)] negligence. Am. Compl. at 4 (VI), ECF No. 6. Medical negligence is not deliberate indifference. *Aguocha-Ohakweh*, 731 F. App'x at 315 (plaintiff may not "recast allegations of medical negligence as federal constitutional deprivations" actionable under § 1983). Also, Orlando acknowledges that "guards" "can call to see if [an] offender can be sent to medical for emergency walk in" but did not do so in his case. MDS at 1(c), ECF No. 9. This demonstrates that the jail detention guards also did not see Orlando's "spider bites" as a medical emergency.

Orlando has not alleged specific facts that Nurse Marcos had "actual subjective knowledge of a substantial risk of serious harm but respond[ed] with deliberate indifference to that risk." *Sutherland v. Akin*, No. 4:19-cv-216-O, 2022 WL 1409968, at *5 (N.D. Tex. 2022) (citation omitted). There are certainly no facts supporting more than a purely speculative conclusion that Nurse Marcos ever should have formed, much less ever actually did form, such a belief. As such, Orlando's claims under § 1983 against Nurse Marcos must be dismissed.

    2.    <u>Prong 2-No Showing that Nurse Marcos Violated a Clearly Established Law.</u>

Orlando cannot point to any clearly established law under sufficiently similar circumstances as those pleaded in this case to have put Nurse Marcos on notice that anything he

did or did not do violated any of Orlando's constitutional rights. As stated above, officials "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue," *Kisela v. Hughes*, 548 U.S. 100, 104 (2018) (citation omitted). It is the plaintiff's burden to identify such case law that makes the officer's actions under "the specific facts at issue" so clearly unlawful that it places the issue "beyond debate." *Garcia v. Blevins*, 957 F.3d 596, 600-01 (5th Cir. 2020). A plaintiff's failure to do so "dooms his case." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018). Because Orlando cannot meet his burden to show that the law was clearly established at a sufficiently particularized level that anything Nurse Marcos did violated Orlando's Fourteenth Amendment rights, Orlando has not and cannot overcome Nurse Marcos' entitlement to qualified immunity.[3]

### D.     Orlando fails to state an Official-Capacity claim

The defendant argues that Orlando's pleadings are unclear as to whether he is suing Nurse Marcos in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining the difference between individual capacity claims and official capacity claims: "Personal-capacity suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"). Even to the extent that Orlando seeks such relief, he has failed to assert a plausible claim under controlling Supreme Court authority. *See Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

---

[3] Because the Court has determined that Orlando failed to state claims to overcome Nurse Marcos's qualified immunity defense, the Court need not reach the alternative motion for a Rule 7(a)

Assuming *arguendo* that Orlando is trying to hold "John Peter Smith ('JPS') Healthcare" (given that Orlando has sued a JPS employee), he has failed to state a claim. First, because § 1983 is not a negligence statute, Orlando cannot recover for any alleged negligence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). Second, municipalities/governmental entities cannot be held liable under § 1983 on a respondeat superior theory, and a governmental entity is not liable where an injury is caused solely by one of its employees or contractors. *Monell*, 436 U.S. at 690. Therefore, Orlando cannot recover under a theory of vicarious liability.

Third, Orlando has not alleged any facts to support *Monell's* three elements. Proof of municipal liability requires "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Each of these elements is critical to a successful claim. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "It is rare that a municipality will be found liable for an isolated unconstitutional act committed by one of its employees." *Harmon v. City of Arlington, Tex.*, 478 F. Supp. 3d 561, 573 (N.D. Tex. 2020), *aff'd*, 16 F.4th 1159 (5th Cir. 2021).

Indeed, "[a]llegations of an isolated incident are not sufficient." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). Moreover, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotations and citation omitted).

Here, Orlando has only made allegations about his isolated situation and has failed to plead any facts of (1) an official policy (or custom), of which (2) a policy maker could be

---

Reply.

11

charged with actual or constructive knowledge, or (3) a constitutional violation whose moving force is that policy (or custom). *See Pineda*, 291 F.3d at 328. Accordingly, to the extent, Orlando alleges claims under § 1983 against Nurse Marcos in an official-capacity, such claims must also be dismissed.

### E. State Law Claims Not Properly Pleaded

Lastly, to the extent that Orlando attempts to assert state law claims under Texas law, such claims must be dismissed for the reasons stated in Defendant Marcos's motion to dismiss at pages 18-20. ECF No. 16.

### III. CONCLUSION AND ORDER

For all of these reasons, it is therefore **ORDERED** that Defendant Marcos Guerra's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 16) is **GRANTED**, such that all plaintiff Jon R. Orlando's remaining claims are **DISMISSED** with prejudice.

**SO ORDERED** on this **11th day** of **July, 2024.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE